

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0608-08

**EMILY HARDY and HIRAM K. MYERS, Appellants**

**v.**

**THE STATE OF TEXAS**

## ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE TENTH COURT OF APPEALS
## McLENNAN COUNTY

**KELLER, P.J., filed a dissenting opinion in which MEYERS, KEASLER, and HERVEY, JJ., joined.**

The problem with the court of appeals opinion is that it fails to consider the evidence in the light most favorable to the verdict.[1]  Unfortunately, this Court repeats the mistake.

Each appellant was charged by information alleging that on the 14th day of April, 2006, the appellant:

did then and there, without legal privilege or authority, intentionally or knowingly

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

disobey a reasonable request or order to move issued by Sgt. Janet Smith, a person the defendant knew to be a peace officer with authority to control the use of the premises, to prevent obstruction of a street, to-wit: Prairie Chapel and Morgan Road, Crawford, Texas, to which the public or a substantial group of the public had access.

The Court says, "Nothing in the records indicates that appellants, by sitting in a small tent erected in the bar ditch or by any other conduct, rendered passage more unreasonably inconvenient or hazardous than by sitting in a chair in the same location."[2]  But there is evidence that it did. Captain Vanek testified as follows regarding the hazard caused by people in tents:

> With individuals staying in tents in this type of area – the roads are very narrow, barely wide enough for two vehicles to pass safely, and the right-of-way from this road to the fences is narrow also.  And if someone was driving down the road and had some type of mechanical failure on the vehicle or possibly they thought that another oncoming vehicle might hit them, they would have to take evasive action and possibly go into the ditch.  And someone sitting in a tent wouldn't be able to see the hazard coming toward them, where if they were standing out along the side of the road, they would at least be able to react to try to get out of the way.

He also expressed concern over the fact that farm equipment commonly seen on the country roads takes up the whole roadway, which would cause an oncoming vehicle to have to pull into the ditch. Captain Vanek's one concern was the safety of everyone involved.[3]

Sergeant Channon testified that people inside a tent would not be aware that a vehicle was coming.  When cross-examined about how reasonable it was to assume that a car would come by at such a speed that he couldn't stay on the road, the sergeant answered, "I think it's very reasonable."

The Court also says, "Neither is there any evidence that the tents themselves obstructed passage or made it hazardous." I find the following in the record regarding whether the tents

---

[2]  The issue is not actually the comparative danger of the two.

[3]  People in chairs and standing around asked to be arrested, but the officers refused to arrest anyone outside the tents because they did not believe it was hazardous.

obstructed passage or made it hazardous: Sergeant Channon testified that when he arrived at the location, he observed that "there was a tent that was too close to the roadway which would cause an obstruction, as far as two vehicles passing simultaneously, side by side." He continued, saying that vehicles "don't necessarily have to be in the traffic lane to obstruct the roadway," and in his opinion if two vehicles "cannot pass going opposite directions without hitting something, then it's an obstruction of that roadway." It did not appear to him that two vehicles could pass without hitting each other or getting off the road. And there was testimony that during the large protest the prior August, there was at least one incident in which two pickup trucks were traveling down the road and their mirrors hit and caused damage to the vehicles because there was not enough room to pass.

Furthermore, Captain Vanek was asked, regarding the people in the tent, "But they were obstructing the passage of the street?" to which he answered, "Right."[4]

And Lieutenant Smith[5] was asked, "And do you believe that those tents and the people inside of the tents posed an obstruction to that roadway?" She answered, "Yes."[6]

Video recordings of the offenses were introduced into evidence by both the State and the defense. I have watched them, and they provide further support for the convictions. Not only do they show Lieutenant Smith reading the warnings, they show how close the tents were to the paved part of the roadway.

So there was in fact evidence that appellants, by sitting in a tent beside the road, rendered

---

[4] Captain Vanek also testified that the people in the tent were not obstructing the actual paved part of the street, but they were obstructing the right-of-way.

[5] She was a sergeant on the date of the offenses.

[6] Appellant's objection to the question and answer was sustained, but no instruction to disregard was requested or given to the jury.

passage unreasonably inconvenient or hazardous, and there was in fact evidence that the tents themselves obstructed passage or made it hazardous. As a reviewing court, we may not simply disregard that evidence. The jury was entitled to believe it, and we defer to that determination.[7]

There are a number of other assertions in the Court's opinion that refer to evidence that does not merit deference in a legal-sufficiency analysis. For example, the Court says, "The demonstrators were informed at the scene that they were being arrested for violating the tent ordinance, as they had intended..." That is indeed what appellant Hardy testified to, but the jury was under no obligation to believe that testimony. More to the point, the testimony about the county no-camping ordinance is irrelevant in a legal-sufficiency review relating to convictions for violation of a state statute.

The Court quotes the testimony of appellant Hardy that if the officers had said they were concerned for the protesters' safety she would have gotten out of the tent. This quotation is inapt for a number of reasons. First, of course, the jury did not have to believe the testimony. Second, the document read to the protesters that day warned explicitly of the danger to the people in the tents, including by beginning, "In order to keep you safe..." Third, it is irrelevant to the question of whether appellants violated §42.03.

The Court says the State appears to conflate the county ordinance and the statute, but it seems to me that it was the defense that first did so, and now it is the Court itself. At trial, it was the defense that sought to admit the order of the commissioners court. The State objected, saying "this trial doesn't have anything to do with the ordinance." Claiming the evidence was irrelevant, the prosecutor continued, "This trial is about 42.03 of the Penal Code. We don't want to confuse the issue with an ordinance when it's not what the defendants have been charged with." The Court says,

---

[7] *Clayton v. State*, 235 S.W.3d 772, 778 (2007).

"Proof that appellants violated the county ordinance is not proof that they violated §42.03(a)(2)(A)." True enough, but the point is irrelevant. As far as the State was concerned, this case was never about the ordinance; it was simply a prosecution for violation of §42.03. If there is confusion about the two issues, it is none of the State's doing.

Also, in saying that §42.03 "prohibits obstruction only of the part of a road easement that is used for vehicular travel" the Court seems to ignore the language of the statute that prohibits obstruction of "any other place used for the passage of persons." I do not agree that the State emphasized "obstruction" as the lack of ability of the demonstrators to view their surroundings, but even if that were accurate, it would not matter in a legal-sufficiency review. Contrary to the conclusion of the Court, the statute does not limit "hazardous" either to people on the road or off the road. I must disagree with the Court's statement, "The statute expresses concern for the safety of those who are traveling, not those who may be on the side of the road."

There are what I believe to be other discrepancies between the trial record and the Court's opinion, and they are relatively minor. I mention them, however, because they affect the overall picture of the situation portrayed by the Court. The Court says the order to move would be unreasonable when applied to persons "such as appellants, who were ordered to remain in the bar ditch and off of the road and did so." But this totally misconstrues both the order and the facts. The protesters were told to stay off the road. They were also told that they would be arrested if they got into a tent. Those that stayed off the road and did not get into a tent were not arrested. Appellants got into a tent and were arrested. It is only in this sense that appellants were "ordered to remain in the bar ditch and off the road and did so." Another instance of confusion by the Court is in saying that Lieutenant Smith agreed that the tents were in the right-of-way "as defined by the county

ordinance." I do not find this modifier in Lieutenant Smith's testimony.[8]

The Court says, "During August 2005, there were no major incidents involving demonstrators and no arrests for obstructing a roadway." There was testimony to that effect, but there was also testimony that in August there were major disruptions and the situation had "gotten out of control." Several hundred vehicles parked along the ditches before officers could get there and prevent anything that would be a safety hazard to anyone. Photographs from the August protest show tents, cars, and port-a-potties encroaching on the pavement, and people sitting, standing, and walking on the pavement. Implicit in the testimony of one of the officers is that no arrests were made because there were so many protesters and so few officers. The situation in August had gotten out of hand, and law enforcement officers – quite reasonably – wanted to prevent that from happening again.

I respectfully dissent.

Filed: April 22, 2009
Publish

---

[8] I note also that the Court's discussion of common usage of the term "highway" is unnecessary. The jury charge defines "highway or street" as "the width between the boundary lines of a publicly maintained way any part of which is open to the public for vehicular travel."